IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

*Alexandria Division*

|  |  |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>JAMON KANEE MURPHY<br>a/k/a, "Monjo,"<br>a/k/a, "Mondow,"<br><br>TAVARES DELANO WITHERSPOON, JR.,<br><br>and<br><br>███████████<br>███████<br><br>*Defendants*. | Case No. 1:26-cr-125 |

## PRETRIAL DETENTION MEMORANDUM

The United States of America, by and through undersigned counsel, hereby files this

Pretrial Detention Memorandum in support of its request for pretrial detention of defendants ████

████ ("████████ and Tavares Witherspoon ("WITHERSPOON").[1]

## BACKGROUND

On Thursday July 9, 2026, a federal grand jury sitting in Alexandria returned a three-count

Indictment, charging all three defendants with (1) Conspiracy to Commit Hobbs Act Robbery, in

violation of 18 U.S.C. § 1951(a); (2) Hobbs Act Robbery, in violation of 18 U.S.C. § 1951(a); and

(3) Using, Carrying, Brandishing, and Discharging a Firearm During and in Relation to a Crime

of Violence Causing Death, in violation of 18 U.S.C. §§ 924(c), (j) and 2. The conduct underlying

---

[1] Lead defendant Jamon Murphy has already appeared for an initial appearance in this matter.
During that initial appearance, Murphy waived his detention hearing.

1

the Indictment stems from a robbery of marijuana dealers at The Crossing DC Apartments in Navy Yard in Washington, D.C. (the "Crossing") on June 12, 2024. As part of the robbery, two individuals were shot and killed. All three defendants, alongside another co-conspirator, Albaro Amaya, who was killed during the episode, participated in the robbery, forcing their way into Apartment 1034 where the marijuana products were being stored. All participants were brandishing firearms, with at least one participant physically striking one of the occupants of Apartment 1034.

As the robbery was near completion, ██████ and WITHERSPOON encountered several witnesses in the 10th floor hallway. Both ██████ and WITHERSPOON brandished firearms at the witnesses, debating whether to let the witnesses go. Later, the victim of the robbery, M.S., engaged in a physical struggle with Amaya. The evidence suggests the victim disarmed Amaya and shot Amaya with Amaya's own revolver. Murphy, who was with Amaya during this struggle, then retaliated by shooting M.S. Both Amaya and M.S. died of their wounds.

The nature and circumstances of this offense, an armed robbery within a crowded apartment building that resulted in the death of two individuals, overwhelming support detention. The likely Guidelines range for ██████ and WITHERSPOON is near 30 years to life imprisonment, providing a massive incentive for both to flee on bond. The evidence in this case is undeniable, consisting of witness testimony, CCTV footage from the scene of the robbery/homicide, cell site data placing most participants at the scene, and other indisputable evidence. The history and characteristics of ██████ and WITHERSPOON support their detention. Finally, detention is the only way to prevent ██████ and WITHERSPOON from committing more dangerous and violent acts in the community.

For these reasons, ██████ and WITHERSPOON present a flight risk and a danger to the

community, making both unable to overcome the applicable presumption of detention in this case.

## LEGAL STANDARD

Because all defendants were charged with an offense under 18 U.S.C. § 924(c), there is a rebuttable presumption under 18 U.S.C. § 3142(e)(3)(B) that no condition or combination of conditions will reasonably assure the defendants' appearance at future court proceedings and the safety of the community.  Once triggered, the presumption imposes a limited burden of production on the defendants to come forward with some evidence that they do not pose a danger to the community or risk of flight.  *See, e.g.*, *United States v. Reuben*, 974 F.2d 580, 586, (5th Cir. 1992), *cert. denied*, 507 U.S. 940 (1993); *United States v. Khusanov*, 731 F. App'x 19, 21 (2d Cir. 2018).  If any defendant meets this burden of production, then the burden shifts back to the government to show that defendant's risk of flight by a preponderance of the evidence, *see United States v. Stewart*, 19 F. App'x 46, 48 (4th Cir. 2001), or risk of harm to any person or the community by clear and convincing evidence, *see* 18 U.S.C. § 3142(f)(2)(B).  "For pretrial detention to be imposed on a defendant, the lack of reasonable assurance of either the defendant's appearance or the safety of others or the community, is sufficient; both are not required."  *Stewart*, 19 F. App'x at 48.

In determining whether there are conditions of release that will reasonably assure the defendants' appearance as required and that will protect the safety of the community, the Court must consider four factors: (1) "the nature and circumstances of the offense charged," including whether the offense is a "crime of violence;" (2) "the weight of the evidence against" the defendants; (3) "the history and characteristics of" the defendants, including the defendants' physical and mental conditions; and (4) "the nature and seriousness of the danger to any person or the community that would be posed by" the defendants' release.  18 U.S.C. § 3142(g)(1)–(4).

3

## ARGUMENT

Neither ▮▮▮ nor WITHERSPOON can overcome the presumption of detention in this case and, even if they could overcome the presumption, the risk of danger to the community and of nonappearance weigh strongly in favor of their detention.  As set forth more fully below, there is no condition or combination of conditions that can reasonably assure safety of the community nor either's appearance before the Court.

**I.      The 18 U.S.C. § 3142(g) Factors Overwhelmingly Weigh in Favor of Detention.**

A.      The Nature and Circumstances of the Charged Offense

The first § 3142(g) factor, the nature and circumstances of the offense, weighs heavily in favor of detention.  All three defendants were involved in the planning and execution of an armed robbery of marijuana dealers inside Apartment 1034 of the Crossing, a luxury apartment building approximately a quarter mile from Nationals Park.  As part of that robbery, the defendants ordered the occupants of Apartment 1034 to the ground, with multiple occupants being physically struck at various times.  Witnesses, including ones who were only in Apartment 1034 for a social visit, described the defendants being armed with pistols, a shotgun, and a long-barreled rifle.  Together, the defendants stole an estimated $100,000 worth of marijuana products and an unknown quantity of cash.

Towards the end of the robbery, ▮▮▮ and WITHERSPOON encountered M.S. and his companions in the 10th floor hallway.  Both defendants held the group at gunpoint, debating whether to let the group go.  WITHERSPOON was identified as the defendant strongly advocating for not letting M.S. and his companions leave.  Eventually, M.S. and his companions were able to escape and flee the building.  However, M.S. later confronted Murphy and Amaya as they were completing the robbery, with M.S. and Amaya engaging in a physical struggle.  The evidence

4

suggests that M.S. shot Amaya with Amaya's own revolver during the struggle. Murphy then retaliated by shooting at both M.S. and one of M.S.'s companions who was nearby. M.S. and Amaya both suffered two gunshot wounds each and later died.

It is hard to imagine conduct more dangerous. The defendants initiated an armed robbery inside of a commercial establishment, bringing shotguns and rifles to use in furtherance of the robbery. They brandished firearms at and physically assaulted individuals inside Apartment 1034, including individuals who had nothing to do with the underlying marijuana products. Both ▮▮▮ and WITHERSPOON then brandished firearms at M.S. and his companions in the 10th floor hallway, with WITHERSPOON arguing for not letting the group go after they saw ▮▮▮ and WITHERSPOON. Finally, two individuals died in connection with the robbery, including M.S. These deaths are tragic enough. However, considering the number of potential bystanders around, the death toll could have been higher. Accordingly, this factor weighs heavily in favor of detention.

B.    The Weight of the Evidence

The weight of evidence against the defendants is overwhelming and weighs heavily in favor of detention. Testimony, corroborated by text messages, cell phone location data, and other evidence, will establish that Murphy contacted Amaya about the potential robbery in the later hours of June 11, 2024. Murphy, Amaya, and another individual ("UCC-1") then traveled to an area in northeast D.C., where they met up with ▮▮▮ and WITHERSPOON. From there, the defendants traveled to the Crossing to commit the robbery. After M.S. and Amaya were both shot, Amaya was driven to INOVA Alexandria Hospital and left bleeding in the parking lot by UCC-1 and Murphy. Separately, ▮▮▮ and WITHERSPOON fled to Richmond together after the robbery.

5

Most importantly, aspects of the robbery and shooting were captured by video footage from the Crossing and surrounding CCTV footage. For instance, video footage from the Crossing's elevators caught all four conspirators entering the building in pairs, as shown below.



*Amaya following Murphy into the elevator.*



███ *(right) and WITHERSPOON (left) entering an elevator on the ground floor.*

The same elevator footage caught ▇▇▇ and WITHERSPOON on the 10th floor. In this footage seen below, both can be seen placing what appear to be firearms into their waistbands, corroborating witness accounts of ▇▇▇ and WITHERSPOON brandishing firearms at M.S. and his companions.

 

*▇▇▇ (left) and WITHERSPOON (right) placing firearms into their waistbands.*

The CCTV footage from outside of the Crossing also caught the struggle between Amaya and M.S., as well as Murphy firing four shots, two in the direction of M.S. and two in the direction of his fleeing companion. The CCTV footage caught Murphy running towards the getaway vehicle carrying a backpack from the robbery and armed with a pistol equipped a red laser sight, as shown below.

7



*Murphy fleeing after the shots were fired, carrying a large bag. The handgun's equipped red laser is illuminating the sidewalk.*

The strength of the evidence is a factor that should be weighed equally among other factors. *See United States v. Mitchell*, 1:24-cr-175, Dkt. No. 27, at 8 (E.D. Va. Aug. 23, 2023); *United States v. Shaheed*, 455 F. Supp. 3d 225, 232 (D. Md. 2020).  Here, the strength of the evidence is undeniable and overwhelming.  Accordingly, both ▮▮▮▮ and WITHERSPOON, if convicted at trial of the offenses in the Indictment, would face Guidelines ranges of life imprisonment.   Even if both choose to plead guilty to the offenses, the United States estimates the Guidelines for ▮▮▮▮ to be 360 months to life imprisonment and the Guidelines for WITHERSPOON to be 292–365

8

months. The overwhelming strength of the case against both ▮▮ and WITHERSPOON, combined with the potential to serve such lengthy sentences in federal prison for the offense, give both an immense incentive to flee. *See United States v. Maitland*, 2020 WL 1929133, at *1 (E.D. Va. Apr. 21, 2020) (finding "that the penalties at stake" in a case where the defendant was charged with offenses carrying significant mandatory prison sentences "provide[d] a strong incentive to flee"); *United States v. Berkun*, 392 F. App'x 901,903 (2d Cir. 2010) (noting that when "the evidence of guilt is strong, it provides" a defendant "with an incentive to flee").

      C.      <u>The History and Characteristics of ▮▮ and WITHERSPOON</u>

Neither ▮▮ nor WITHERSPOON's backgrounds support release here. Regarding ▮▮ he has prior convictions for both assault & battery and robbery in 2018. For the robbery conviction, he was sentenced to eight years' imprisonment with three years and eleven months suspended. Even after serving multiple years in state prison for a robbery conviction, ▮▮ returned to the same criminal behavior after release, this time resulting in the death of two individuals. If a multi-year prison sentence did not deter ▮▮ there are no conditions this Court can impose that will keep the community safe.

Regarding WITHERSPOON, while he has fewer formal convictions than ▮▮ his conduct is no less concerning. WITHERSPOON has several arrests related to theft, drug distribution, and robbery, the very kinds of conduct charged in this case. Moreover, one of his robbery arrests came over a year ***after*** the conduct in the instant case. The deaths of two individuals during an armed robbery clearly did not stop WITHERSPOON from later engaging in similar behavior.

Here, ▮▮ convictions and the instant Indictment show a pattern of violence. WITHERSPOON's arrests do the same, which courts have routinely held are relevant to assessing

9

the danger of a defendant to the community.  *See, e.g.*, *United States v. Held*, 2024 WL 4836077, at *2 (E.D. Mo. Nov. 20, 2024) (finding that "charged conduct and uncharged relevant conduct" demonstrated that the defendant was a risk to the community if released); *United States v. Cruz-Hernandez*, 422 F. Supp. 3d 157, 161 (D.D.C. 2019) (considering government proffer of uncharged conduct when determining pretrial detention); *United States v. Bruno*, 89 F. Supp. 3d 425, 430 (E.D.N.Y. 2015); *United States v. Rodriguez*, 950 F.2d 85, 88 (2d Cir. 1991) (reversing release and ordering detention while rejecting "requirement that the violent conduct . . . be connected to the activity charged in the indictment").  Both ▇▇▇▇ and WITHERSPOON's criminal past, combined with the instant conduct, warrant detention.

      D.      <u>The Nature and Seriousness of the Danger to Any Person or the Community</u>

Finally, pretrial detention is the only way to protect the public from future crimes committed by ▇▇▇▇ and WITHERSPOON.  Both men have violent criminal activity in their past, which dovetails with the incredibly violent acts shown by all defendants in the instant case. Neither ▇▇▇▇ nor WITHERSPOON can make the proper showing to rebut the presumption of danger to the community present in this case.

*(Continued on next page.)*

**CONCLUSION**

As set forth herein, the United States respectfully submits that ▮ and WITHERSPOON cannot rebut the presumption that there is no condition or combination of conditions that would reasonably assure their appearance at future proceedings and safeguard the community. Even if they could overcome the presumption, a balancing of the factors in § 3142(g) warrant detention in this case. Accordingly, ▮ and WITHERSPOON should be detained pending further proceedings in this Court.

Respectfully submitted,

Todd W. Blanche
Acting Attorney General

Theophani K. Stamos
First Assistant United States Attorney

Date:   July 21, 2026                    By:   _____/s/_____
                                              Christopher M. Carter
                                              Edgardo J. Rodriguez
                                              Assistant United States Attorneys
                                              Office of the United States Attorney
                                              2100 Jamieson Avenue
                                              Alexandria, Virginia 22314
                                              Phone: (703) 299-3947
                                              Fax: (703) 299-3980
                                              Christopher.carter2@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that on July 21, 2026, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send a notification of such filing to all counsel of record.

By:           /s/

Christopher M. Carter
Assistant United States Attorney